Citation Nr: 1736710 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 11-20 487 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in 
Sioux Falls, South Dakota


THE ISSUE

Entitlement to service connection for a left hip labral tear, to include as secondary to service-connected low back strain and/or left knee retropatellar pain syndrome.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Saudiee Brown, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1978 to June 1992.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Sioux Falls, South Dakota. The Board previously remanded this matter in May 2014 and March 2017.

The Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge in June 2013. A transcript of the hearing is of record.


FINDING OF FACT

A left hip labral tear was not present until many years after separation from service, is unrelated to service, and was not caused by or aggravated by the Veteran's service-connected low back strain and/or left knee retropatellar pain syndrome.


CONCLUSION OF LAW

The criteria for service connection for left hip labral tear have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307(a)(6), 3.309(e), 3.310 (2016).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2016). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Compliant notice was provided to the Veteran in February 2011.

VA has a duty to assist the Veteran in the development of the claim. The claims file includes service treatment records (STRs), VA medical records, and the statements of the Veteran in support of his claim. The Board has considered the statements and perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim for which VA has a duty to obtain.

The Board also notes that actions requested in the prior remands have been undertaken. Indeed, supplemental VA examiner opinions were provided. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

VA examinations were obtained in March 2011, and addendum opinions were obtained in July 2014, March 2015 and March 2017. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the Veteran has been afforded adequate VA examinations and opinions. The reports include a clinical examination, diagnostic testing, and the Veteran's reported symptoms. The reports provide findings and adequate rationale relevant to the criteria for service connection. 

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to the claim. Essentially, all available evidence that could substantiate these claims has been obtained.

II. Service Connection 

Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Hickson v. West, 12 Vet. App. 247 (1999); Caluza v. Brown, 7 Vet.App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table). Service connection may also be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In each case where service connection for any disability is being sought, due consideration shall be given to the places, types, and circumstances of such Veteran's service as shown by such Veteran's service record, the official history of each organization in which such Veteran served, such Veteran's medical records, and all pertinent medical and lay evidence. 38 U.S.C.A § 1154(a) (West 2014).

Under 38 C.F.R. § 3.310, service connection on a secondary basis may be granted for a disability that is proximately due to or the result of a service-connected disease or injury, or for the degree of disability resulting from aggravation of a non-service connected disability by a service connected disability. See also Allen v. Brown, 7 Vet. App. 439, 448 (1995).

In adjudicating a claim, the Board must assess the competence and credibility of the Veteran. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Board also has a duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). The Veteran is competent to provide facts about what he experienced; for example, he is competent to report that he engaged in certain activities in service and currently experiences certain symptomatology. See, e.g., Layno v. Brown, 6 Vet. App. 465 (1994). Competency, however, must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); see also Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). The Board acknowledges that it cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. See Buchanan, 451 F.3d at 1337. However, such lack of contemporaneous evidence is for consideration in determining credibility.

Once the evidence is assembled, the Board is responsible for determining whether the preponderance of the evidence is against the claim. If so, the claim is denied; if the evidence is in support of the claim or is in equal balance, the claim is allowed. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case with all reasonable doubt to be resolved in favor of the claimant; however, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 3.102. 

To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.


Analysis

The Veteran's service treatment records do not include diagnoses or treatment for left hip labral tear. There is no evidence that this disability was manifest within a year of separation from service. In addition, the earliest treatment for a left hip labral tear was found in private medical records from December 2010, where the Veteran was seen for a left hip injection. At this time, the private physician noted that the Veteran reported doing something at work where he felt a pop. The Veteran was diagnosed with small labral tear of the left hip and opined that this could be related to his low back problems as well as knee arthrosis.

In a December 2010 VA primary care note, the Veteran reported a history of hip injections and that he had arthritis in his hips. Upon examination, there was no edema noted. The physician diagnosed the Veteran with degenerative arthritis especially in his left knee and both hips.

In March 2011, the Veteran was afforded a VA examination for his claim. The Veteran stated that he believed his left hip was secondary to his service-connected low back strain and/or left knee retropatellar pain syndrome because he found himself "overcompensating." The Veteran said that his left hip popped and hurt in his groin area, which started during service though at the time he thought it was something else. The Veteran denied any stiffness, deformity, instability, giving way, lack of endurance, effusion, swelling, heat or redness. He did not use a brace, cane or crutches. Upon examination, the examiner noted that the Veteran had an extremely elevated body mass index (BMI) at 35, which was significant obesity. He walked unaided and unassisted with a normal gait. The left hip revealed no gross deformity or atrophy, no palpable pain or crepitus, and no snapping elicited. Flexion was 0 to 105 degrees, extension 0 to 25 degrees, abduction 0 to 40 degrees, internal rotation 0 to 10 degrees, and external rotation 0 to 40 degrees. The Veteran complained of pain mainly with external rotation. 

The examiner opined that the Veteran's current left hip condition was not caused by or a result of his low back strain or left patellofemoral pain syndrome. The examiner reasoned that there was no abnormal gait noted either by the December 2010 private physician or upon current examination and that if there was a significant altered gait, that the contralateral side would be affected due to overcompensation. The examiner also said that it was clear from the history that the Veteran suffered some type of work injury where he felt a popping sensation that would go along with a labral tear. Finally, there was no objective medical evidence in any literature or resource, such as the National Library of Medicine Evidence-Based Medicine, that a low back strain or left knee patellofemoral pain syndrome would cause a labral tear or coxarthrosis. The Board notes that in the May 2014 Board remand, this opinion was found not adequate.

In May 2011 and May 2012, the Veteran saw his private physician for his severe reflux; however, his extremities and musculoskeletal system were examined at this time. The private physician found no pitting edema, joint swelling, redness or tenderness. The Veteran also denied any focal motor or sensory deficits, but did note some sciatic pain.

In June 2013, the Veteran testified at a Travel Board hearing regarding his claim. The Veteran stated that he believed he injured his left hip during service, but conceded there was no mention of that injury. He said at that time he felt it was groin pain and did not know it was hip pain until over twenty years later when his doctor told him, he was feeling hip pain. The Veteran stated that before he had his left hip surgery he was able to walk but it would take him more than an hour to get down the stairs.

In July 2014, an addendum opinion was provided to clarify the March 2011 VA examination. The examiner opined that it was less likely than not that the Veteran's left hip condition was chronically aggravated or worsened by his service-connected low back strain and/or patellofemoral syndrome. The examiner reasoned that documentation of any hip condition was sparse. Specifically, there were no primary care or orthopedic entries addressing the Veteran's hip, and in the subjective history portion of the Veteran's notes he did not mention or address any hip, knee, back association. Further, in the UpToDate reference, it was silent for any hip conditions causing referred pain into the back. The examiner noted that the Veteran did not have a limp or use any assistive devices like a cane for ambulatory support of a contralateral side. Finally, the examiner stated that if the Veteran was going to have any aggravation of back pain from a knee or hip condition, he would expect to see significant damage like severe degenerative arthritis or ankylosis of his hip or knee, which were all negative. The Board notes that this opinion inaccurately addressed aggravation of back pain.

In September 2014, the Veteran's private physician submitted a letter regarding the Veteran's claim. The private physician stated how he was told by the Veteran that when he left the military his left hip was bothersome, and that in April 2011 he underwent a left hip scope for labral debridement and other pathology associated with his hip. The private physician opined that the Veteran could have injured his left hip during active duty. 

In March 2015, another addendum opinion was provided following the Veteran's submission of additional evidence showing past treatment for his left hip disability. The examiner opined that it was less likely than not that the left hip condition was chronically aggravated or worsened by service-connected low back strain and/or patellofemoral pain syndrome. The Board notes that in the March 2017 Board remand, this opinion was found to be inadequate as the examiner's opinion did not address the Veteran's reports that his left hip condition had worsened because he was "overcompensating" due to service-connected lower back strain and/or left knee retropatellar pain syndrome. In addition, the opinion did not correct the error made in the March 2015 VA addendum opinion which incorrectly talked about aggravation of the back by a hip and/or knee disability. 

In March 2017, another addendum opinion was provided following the Board's March 2017 remand. The examiner opined that the Veteran's left hip pain was less likely as not aggravated by his service-connected lumbar spine strain and left knee strain. The examiner reasoned that the Veteran's hip condition was silent during his military service. The examiner further stated that the September 2014 letter from the Veteran's private physician saying that the Veteran injured his hip during service was only based on the Veteran's personal history. The private physician did not have access to the Veteran's service treatment records. In addition, the examiner said that the Veteran did not start having bilateral hip pain more on the left than the right until around 2010, where he was diagnosed with left hip labral tear at the superior labral/chondral labral junction almost 25 years after military discharge. The Veteran underwent left hip arthroscopy with labral debridement and femoroplasty of cam lesion in March 2011. The examiner stated that the Veteran's left knee strain without any history of limping and lumbar spine strain less likely than not aggravated the left hip condition. The examiner said that the Veteran was obese with a BMI of 34.66 which contributed to his bilateral hip condition, and that there was no objective medical evidence in any medical literature that a low back strain or left knee patellofemoral pain syndrome would cause a labral tear or coxarthrosis.

Thus, there is no credible lay evidence or competent medical evidence linking the Veteran's left hip labral tear to service. In addition, there is no lay or medical evidence showing that the left hip labral tear was caused by or aggravated by his service-connected low back strain and/or left knee retropatellar pain syndrome.
 
The Board also considered the lay statements offered in support of the Veteran's claim. The Veteran is competent to testify on factual matters of which he has first-hand knowledge. Washington, 19 Vet. App. 362. He is also competent to report symptoms of his condition. Layno, 6 Vet. App. 465, 469-71. However, lay witnesses are not competent to provide a medical diagnosis. See Barr, 21 Vet. App. 303. Thereby, the Veteran is not competent to definitively state the cause of his current left hip labral tear. In addition, the December 2010 note from the Veteran's private physician stating that the Veteran's left hip labral tear could be related to his service-connected low back strain and/or left knee retropatellar pain syndrome did not provide any rationale for this opinion, and the September 2014 letter from the Veteran's private physician stating that the Veteran's hip injury occurred during service was made without review of his service treatment records. Thus, the Board affords more probative weight to the VA examiners' opinions, when viewed together, than the Veteran's and his private physicians' contentions.

The Board has considered the doctrine of giving the benefit of the doubt to the Veteran, under 38 U.S.C.A. § 5107, and 38 C.F.R. § 3.102, but does not find that the evidence is of such approximate balance as to warrant its application. Gilbert, 1 Vet. App. at 54-56. Therefore, given the absence of evidence that shows that the Veteran's left hip labral tear was incurred in service, manifest within a year after service, or was caused by or aggravated by his service-connected low back strain and/or left knee retropatellar pain syndrome, the preponderance of the evidence is against the claim for service connection; there is no doubt to be resolved. Service connection for a left hip labral tear, to include as secondary to service-connected low back strain and/or left knee retropatellar pain syndrome is not warranted.


ORDER

Entitlement to service connection for a left hip labral tear, to include as secondary to service-connected low back strain and/or left knee retropatellar pain syndrome is denied.




____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs